**VILLAGE OF PORTAGE *v*. PENNINGTON.**

(Nos. 87-CR-B-126 and 88-CR-B-955—
Decided January 3, 1989.)

Bowling Green Municipal Court.

*Chester H. Marcin* and *John S. Cheetwood,* for plaintiff.
*Adrian P. Cimerman,* for defendant.

JAMES W. BACHMAN, J. The present issue for consideration in this case is whether this court's criminal-traffic referee has authority to hear misdemeanor criminal cases.

On August 31, 1988, the defendant, Herman E. Pennington, filed a motion to vacate this court's sentence, which was based upon the findings and recommendations of this court's criminal-traffic referee that the defendant should be jailed for a probation violation. This court conditionally vacated the sentence so as to consider the merits of the motion. The defendant raises the question of whether this court's criminal-traffic referee had authority to hear and determine the probation violation charge. The defendant asserts that the referee had no authority because the charge against the defendant arose in a criminal case rather than in a traffic case. For the reasons stated below, this court concludes that the referee had such authority, regardless of the fact that this is a criminal case rather than a traffic case.

The pertinent facts are: In March 1987, the defendant appeared before a judge of this court, was convicted of disorderly conduct with persistence (a fourth degree misdemeanor under the village code), and received a three-day jail sentence, which was suspended on condition that he have no further criminal violations through March 6, 1989.

In August 1988, the defendant was

1

cited in this case for a probation violation, because, in another case, he was charged with a criminal offense, namely, an assault. On August 17, he appeared before the criminal-traffic referee, waived his rights, and admitted the probation violation. The referee announced his recommendation to reimpose the suspended three-day jail sentence. Shortly thereafter, he filed his report; the undersigned judge accepted it and filed an entry ordering that the suspended jail sentence be served. Defendant's present motion seeks to vacate that order.

### Defendant's Contentions

In the pending case, the defendant agrees that a referee can hear misdemeanor *traffic* cases. See Traf. R. 14. However, he disagrees that a referee can hear misdemeanor *criminal* cases. He cites two authorities:

(1) M.C. Sup. R. 4(B), which addresses the qualifications for a referee and the procedure for him to follow in civil matters and in traffic matters, but is silent as to any other matters, such as criminal matters.

(2) Crim. R. 5, which indicates that in criminal cases the initial appearance is before a ''judge,'' and Crim. R. 2, which defines that term in such a fashion as to not include a referee in the enumeration of those people who are included in the definition.

### The Practice in This Court

This court's referee, Victor Ten Brink, is an attorney at law admitted to practice in this state, and has continually engaged in the practice since November 6, 1983 — a period of five years. For the last three years he has served as the referee of this court, conducting the initial appearance and the arraignment sessions for misdemeanor criminal cases, as well as for OMVI and other traffic cases.

He personally addresses each defendant separately, explaining the nature of the charge, the possible penalties, and the available pleas. He also explains the defendant's rights, including those pertaining to an attorney — whether retained or appointed — and those pertaining to a trial by jury or judge. If any defendant seeks a continuance, he grants it. If a defendant requests a hearing before the judge, the referee grants it. For those defendants who are in jail in lieu of posting bail, he recommends bonds and conditions of bond.

For those defendants who tender pleas, he generally accepts them. He assigns the not guilty pleas for trial or pretrial; he recommends sentences for the no contest and guilty pleas, after hearing the officers' reports and the defendants' statements in mitigation. Within a day or so, this court reviews the referee's written reports and almost invariably accepts them. Occasionally, this court receives written objections (usually handwritten by a *pro se* defendant). After reading those objections, reviewing the report, and listening to the audio tape of the hearing, this court makes an appropriate order, such as adopting or rejecting the report, or hearing the matter itself.

The above-outlined procedure applies to misdemeanor criminal cases, as well as to misdemeanor traffic cases. For a felony case, the referee follows the same general procedure, except that he sets the matter for a preliminary hearing or continues it for initial appearance with an attorney. (And, of course, he is not involved with felony sentences.) The referee does not hear misdemeanor trials or felony preliminary hearings, not because of any known legal limitation, but simply because of court policy.

### The Practice in Some Other Courts

This court has researched the practice of some of the other municipal courts in Ohio. During July 1988, four-

teen of Ohio's one hundred eighteen municipal courts used referees to hear misdemeanor criminal cases. (See Appendix A.)

In the latest edition (1987) of the Ohio Supreme Court's Ohio Courts Summary, at page 6D, the following definitions are set out for municipal and county court cases:

"MISDEMEANORS A misdemeanor is defined by R.C. 2901.02 and Crim. R. 2 as an offense specifically classified as a misdemeanor, or an offense in which imprisonment for not more than one year can be imposed. *While traffic offenses fall within this definition, they are reported as OMVI or other traffic offenses (see below), and not as misdemeanors.* [Emphasis added.]

"OMVI (Operating a motor vehicle while intoxicated). Cases which charge a violation of R.C. 4511.19 or of any local ordinance which prohibits operating a motor vehicle while under the influence of alcohol or any drug of abuse.

"OTHER TRAFFIC A misdemeanor charged under a statute or an ordinance arising out of the use of any type of vehicle which is generally used on the roads of the state except an OMVI offense. Parking violations are not included in this category."

The key language is in the last sentence of the first definition. (See "emphasis added" language, above.) For purposes of reporting case dispositions, the Ohio Supreme Court distinguishes "MISDEMEANORS," on the one hand, from "OMVI" and "OTHER TRAFFIC," on the other. What is the distinction? It is the difference between misdemeanor criminal cases ("MISDEMEANORS") and misdemeanor traffic cases ("OMVI" and "OTHER TRAFFIC"). Hence, for reporting purposes, the municipal courts must tell the Supreme Court how they disposed of, on the one hand, their misdemeanor criminal cases, and on the other hand, their misdemeanor traffic cases.

The significance of this distinction is shown in the tables of the Ohio Courts Summary 1987. For municipal courts, on page 41B, the "Administrative Judge Report Composite For Entire State" has separate column headings for FELONIES, MISDEMEANORS, OMVI, and OTHER TRAFFIC, and separate lines for TRIAL HEARING BY JUDGE and HEARING BY REFEREE. Here are the figures shown for the years 1987 and 1986:

| | "Year | Felonies | Misde-meanors | OMVI | Other Traffic | * * * |
|---|---|---|---|---|---|---|
| "* * * | | | | | | |
| "CASES TER-MINATED BY | | | | | | |
| "TRIAL | 1986 | 13,328 | 90,904 | 22,232 | 190,138 | * * * |
| HEARING | 1987 | 12,626 | 87,285 | 21,344 | 197,211 | * * * |
| BY JUDGE | | | | | | |
| "HEARING | 1986 | | 5,769 | 1,919 | 143,454 | * * * |
| BY REFEREE | 1987 | | 6,114 | 1,434 | 147,131 | * * *" |

4

Thus, referees in Ohio municipal courts, in 1987, heard 6,114 misdemeanor criminal cases.■

### Reasons for Use of Referees

Some municipal courts, like some other trial courts, use referees to move the docket because the public expects and deserves the prompt disposition of cases. Furthermore, for misdemeanor criminal cases (as well as OMVI and other traffic cases), the speedy trial statutes mandate the prompt disposition of cases and require the dismissal of unduly delayed cases. See R.C. 2945.71; see, also, M.C. Sup. R. 5.

When the undersigned judge took office eleven years ago (in 1977) the total annual caseload for this court's criminal-traffic docket was 5,348 cases; now (for 1987) it is 9,272 cases. The size of the docket now is too large for this court's one full-time judge to handle well and efficiently by himself. We use two referees (one for civil-small claims cases and the other, of course, for criminal-traffic cases). And, this court's docket is always current every year.

Big courts and little courts alike are continually seeking ways to manage the oversized dockets. Use of referees is one such way—not only in civil and traffic cases, but also in misdemeanor criminal cases.

### Ohio Supreme Court Rules

Nowhere in the Ohio Supreme Court rules (including the Criminal Rules and the Superintendence Rules) has that court prohibited the use of referees in misdemeanor criminal cases. Furthermore, in the Supreme Court's official superintendence report forms, that court has specifically provided for reporting the number of misdemeanor criminal cases heard by referees.

Crim. R. 1 provides in part:

"(B) Purpose and construction. These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed and applied to secure the fair, impartial, speedy, and sure administration of justice, simplicity in procedure, and the elimination of unjustifiable expense and delay."

M.C. Sup. R. 18 broadly provides:

"Nothing in these rules prevents any local rule or practice which seeks to promote the use of any device or procedure which would tend to facilitate the earlier disposition of cases * * *."

M.C. Sup. R. 4 provides:

### "RULE 4. Referees

"(A) Appointment and use. All municipal courts having more than two judges shall appoint one or more referees to hear the following: default proceedings under Civil Rule 55; forcible entry and detainer proceedings under R.C. Chapter 1923 in which the right to trial by jury is waived or not demanded; small claims proceedings under R.C. Chapter 1925; and traffic proceedings in which there is a guilty plea or written waiver by the defendant of the right to trial by a judge. In addition, courts may refer other appropriate matters to a referee for report and recommendation.

"(B) Qualification; procedure. Referees shall have the qualifications specified in Civil Rule 53 and Traffic Rule 14. In civil matters referees shall act pursuant to Civil Rule 53 and in traffic matters pursuant to Traffic Rule 14.

"(C) Appointment by courts having two or less judges. This rule does not preclude the appointment of referees by courts having two or less judges."

M.C. Sup. R. 3(B)(1) provides in part:

"(B) Assignment system. * * *

"(1) Particular session. A particular session of the court is one in which cases are assigned by subject category rather than by the individual assignment system. The following subject categories must be disposed of by particular session:

"* * *

"(b) Criminal cases in which a plea of guilty or no contest is entered;

"(c) Initial appearance in criminal cases[.]"

See, also, the court's Official Comment to Rule 3(B)(1).

What is the effect of the above rules, as they relate to the use of referees in misdemeanor criminal cases?

First, Crim. R. 1(B) encourages a just determination of every criminal proceeding—with the objective of having fair, impartial, and speedy administration of justice. Referees concededly have the authority to do this in civil cases, small claims cases, and traffic cases. There is no reason why they can't also have authority to do so in misdemeanor criminal cases.

Second, M.C. Sup. R. 18 encourages municipal courts to dispose of cases in an earlier fashion and to devise procedures to promote this objective. One device is the use of referees to hear misdemeanor criminal cases.

Third, M.C. Sup. R. 4 authorizes (and, for some courts, requires) the use of referees in certain proceedings. But, that rule does not limit the use of referees to proceedings enumerated therein, because it also provides: "In addition, courts may refer other appropriate matters to a referee * * *."

This court acknowledges, as the defendant contends, that the Crim. R. 2 definition of "judge" does not include a referee. That rule provides:

"As used in these rules:

"* * *

" 'Judge' means judge of the court of common pleas, juvenile court, municipal court, county court, mayor's court and police court."

However, this court believes that the rule's enumeration of the judges of certain courts is not to be read literally. For example, the "judge" of a mayor's court is not a judge in the true sense of the word. That is, he need not be an attorney at law. Contrast R.C. 2931.01, which uses a broader definitional term ("magistrate") — that includes "judges" of certain specified courts and "mayors of municipal corporations."

This court also acknowledges, as the defendant contends, that Crim. R. 5 refers to "judge," and not "referee," when setting out the procedure to be followed upon initial appearance. However, this court believes that the defendant reads too narrowly the meaning of "judge." For example, that rule requires that the "judge" inform the defendant of his right to a court-appointed attorney pursuant to Crim. R. 44. Yet, Crim. R. 44(B) provides that the "court" may assign counsel. Similarly, Crim. R. 10, Division (B), provides that the "court" may in certain instances permit arraignment without the presence of the defendant, yet Division (C) provides that the "judge" shall explain the rights of a defendant who is present in court. The meaning of "judge" is clearly included within the meaning of "court," but is not co-extensive with that term.

This is made clear in Crim. R. 11. Crim. R. 11(A) provides that if a defendant refuses to plead, the "court" shall enter a not guilty plea on his behalf. Crim. R. 11(B)(3) provides that if a defendant pleads guilty or no contest, the "court" shall proceed to sentencing in most instances. Crim. R. 11(D) provides that in serious misdemeanor cases the "*court*" may refuse to accept a plea of guilty or no contest, and shall not accept such plea *without first ad-*

*dressing the defendant personally* and informing him * * *." (Emphasis added.) Hence, Crim. R. 11 provides that the "court" shall "personally" address the defendant. In a literal sense, "courts" can't address anyone; referees and judges can.

Furthermore, there is additional support for the position that referees can hear misdemeanor criminal cases, as well as other cases (such as OMVI, other traffic, small claims, and civil cases). Crim. R. 57(B) provides:

"Procedure not otherwise specified. If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules of criminal procedure, and shall look to the rules of civil procedure and to the applicable law if no rule of criminal procedure exists."

Both the Criminal Rules and the Ohio Revised Code are silent as to whether or not referees can hear criminal cases. The Superintendence Rules clearly provide that they can hear criminal cases (or at least misdemeanor criminal cases). See M.C. Sup. R. 4(A), last sentence, and (C); M.C. Sup. R. 3(B)(1)(a) and (b).

### Other Justifications for Using Referees

This court notes that mayors of municipal corporations can hear misdemeanor criminal cases, as well as OMVI and other traffic cases. See R.C. 1905.01 and 1969 Ohio Atty. Gen. Ops. No. 69-117. Most mayors are not lawyers and, in fact, have no previous legal training. This court's referee is a lawyer.

Furthermore, this court notes that when referees hear OMVI and other traffic cases they can recommend sentences equal to, and even more severe than, sentences for misdemeanor criminal cases, subject to court approval. For example, in the case of a third OMVI offense within a five-year period, a referee can recommend the following sentence: fine of $150 to $1,000, imprisonment for a term of from thirty days to one year, and a driver's license suspension or revocation of from "180 days" to ten years. See R.C. 4511.99(A)(3) and 4507.16(B) (3). No one is arguing in this case that a referee can't hear an OMVI case. In any misdemeanor criminal case of which this court is aware, the maximum sentence a referee can recommend is: fine of $0 to $1,000 and jail time of 0 days to 6 months. Hence, a referee can recommend much greater penalties in a traffic case (OMVI) than he can in a misdemeanor criminal case.

If referees — as attorneys — can hear OMVI cases, some of which carry more severe penalties than misdemeanor criminal cases, why can't those same referees hear misdemeanor criminal cases? There is no logical, or legal, reason why they can't.

### Conclusion

For all of the above reasons, this court holds that a referee in a municipal court, who is an attorney at law admitted to practice in this state, may hear misdemeanor criminal cases referred to him by the judge, for report and recommendation. This includes the authority to dispose of probation violation charges where the probationer waives his rights and admits the violation, and the referee reports his findings and recommendations, including the imposition of any jail sentence.

The defendant's motion is not well-taken and is overruled.

*Motion overruled.*

### Appendix A

According to the monthly Administrative Judge Reports filed in the Ohio Supreme Court by the municipal judges for July 1988 (or June, if July's

were not on file), the following fourteen municipal courts allowed their referees to hear misdemeanor criminal cases for that month:

- 3 — Akron
- 1 — Bedford
- 16 — Bowling Green
- 12 — Cambridge
- 43 — Cleveland Heights
- 183 — Hamilton County
- 7 — Ironton-Lawrence Co.
- 59 — Marion Co.
- 10 — Massillon
- 157 — Mansfield
- 11 — Medina
- 3 — Painesville
- 23 — Toledo
- 94 — Vandalia
- 622 — Total misdemeanor criminal cases heard by referees in fourteen municipal courts in one month, recently.